# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEVEN SMITH,

Defendant-Appellant.

UNPUBLISHED
January 10, 2017

No. 328736
Wayne Circuit Court
LC No. 15-001977-01-FH

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted, following a bench trial, of first-degree home invasion, MCL 750.110a(2), and sentenced as a fourth-offense habitual offender, MCL 769.12(1), to life imprisonment. He appeals as of right. We affirm defendant's conviction, but remand for further sentencing proceedings.

Defendant first argues that trial counsel was constitutionally infirm for failing to properly advise him that he could be sentenced to life imprisonment as a fourth-offense habitual offender if convicted at trial.[1] We disagree.

A claim alleging ineffective assistance of counsel presents "a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Questions of law are reviewed de novo, and a trial court's findings of fact, if any, are reviewed for clear error. *Id.* "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* (Citation omitted.) Defendant must also put forth the factual predicate of his claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

---

[1] The prosecution's plea offer would have allowed defendant to plead guilty to first-degree home invasion in exchange for dismissal of the habitual offender notice and a sentence within the sentencing guidelines range.

In *Douglas*, the Michigan Supreme Court set forth the applicable principles of law for evaluating whether a defendant was deprived of the effective assistance of counsel during the plea-bargaining process.

> [A defendant] must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at 592, quoting *Lafler v Cooper*, ___ US ___; 132 S Ct 1376, 1385; 182 L Ed 2d 398 (2012).]

At an evidentiary hearing following remand from this Court, defendant, trial counsel, and two attorneys who stood in for trial counsel during hearings earlier on in the lower court proceedings testified. The essence of defendant's testimony was that he was not informed that he could be exposed to a life sentence by proceeding to trial. In contrast, trial counsel, with 17 years of experience in criminal law, testified that her common practice is to read the charging information to a defendant and discuss potential sentence. Trial counsel specifically recalled informing defendant that if the trier of fact believed even some of the alleged facts, he would be likely found guilty of third-degree home invasion, which would allow the trial court to sentence him to life or any term of years as a fourth-offense habitual offender. The trial court stated that while defendant and his trial counsel's testimony were inconsistent, it found trial counsel's testimony to be credible. As a general matter, this Court will afford great deference to a trial court's "resolution of a factual issue[,]" especially where the factual issue implicates witness credibility. *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). Put simply, the record supports the trial court's conclusion that trial counsel gave defendant the necessary information to make an informed decision regarding whether to accept the prosecution's plea offer.

While the attorneys that stood in for trial counsel earlier on in the lower court proceedings did not independently recall advising defendant on the possible perils of rejecting the plea offer, the record evidence did not yield any indication that the prosecution imposed a deadline for defendant to accept the plea offer. For example, at the May 12, 2015 final conference, the prosecutor expressed that the plea offer extended to defendant at earlier hearings had not changed and was still available. There was also nothing in the record to indicate that a court-imposed deadline existed for defendant to accept the plea offer. Specifically, trial counsel testified that in her extensive experience, the presiding judge in this case would allow a defendant to accept a plea offer at any time, including the day of trial. Under these circumstances, the trial court correctly concluded that trial counsel's performance did not fall below an objective standard of reasonableness. *Nix*, 301 Mich App at 207.

Additionally, the trial court correctly concluded that defendant had not incurred any prejudice. Although defendant now asserts, in hindsight, that he would have accepted the plea offer, this contention is dubious, given defendant's continued and ongoing assertions, including at the evidentiary hearing, of his innocence. Further, trial counsel testified that defendant was "adamant" that he was not guilty. Defendant's consistent assertions of his innocence clearly demonstrate an unwillingness to accept a guilty plea. Therefore, defendant has not demonstrated

that it is reasonably probable that he would have accepted the prosecution's plea offer. *Douglas*, 496 Mich at 598.[2] To the extent that defendant asserts that a defendant can and should be able to render a plea of guilt even when innocent, we need not address this argument where the record evidence confirms that, on multiple occasions during the lower court proceedings, defendant was unwilling to plead guilty.

Defendant next argues that the evidence was insufficient to find him guilty of first-degree home invasion beyond a reasonable doubt. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). When ascertaining whether sufficient evidence was presented at trial to support a conviction, "[the Court of Appeals] reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (footnote omitted), quoting *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012) (citation omitted). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008) (citation omitted). The elements of first-degree home invasion are: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).

Defendant's argument regarding the sufficiency of the evidence is that the prosecution failed to establish that he had the intent to commit an assault at the time he entered his family's home. However, the home invasion statute permits conviction of first-degree home invasion if a

---

[2] Defendant initially argued that this Court should remand this matter to the trial court for a determination of his competence or, in the alternative, consideration of his argument that trial counsel was ineffective for failing to request a competency evaluation. This Court granted defendant's motion to remand to allow him to raise this claim in the trial court. *People v Smith*, unpublished order of the Court of Appeals, entered June 2, 2016 (Docket No. 328736). At the outset of the evidentiary hearing, appellate counsel informed the trial court that defendant was not pursuing his claims regarding his competency. Defendant likewise has not advanced these claims in his supplemental brief on appeal, filed after remand to the trial court. Where defendant has not established the factual predicate of this claim, *Douglas*, 496 Mich at 592, and has failed to develop his legal arguments after remand, we consider the issue abandoned on appeal. *People v Kelly*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 331731); slip op at 2 n 2; *People v Bosca*, 310 Mich App 1, 48; 871 NW2d 307 (2015).

person unlawfully enters a dwelling "with intent to commit a felony, larceny, or assault in the dwelling," *or* if the person unlawfully enters a dwelling and "at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault . . . [.]" MCL 750.110a(2). Thus, even if defendant did not enter the dwelling with the intent to commit an assault, he could still be guilty of first-degree home invasion if, after unlawfully entering the dwelling, he actually committed an assault against another person present in the dwelling. The trial court found that defendant both intended to commit an assault when he entered his family's home, and that he actually committed an assault inside the home.

An assault is "'either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery.'" *People v Meissner*, 294 Mich App 438, 453-454; 812 NW2d 37 (2011), quoting *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). Because of the difficulty in proving intent, minimal circumstantial evidence is sufficient. *Harverson*, 291 Mich App at 178. Viewed in a light most favorable to the prosecution, the record evidence was sufficient to enable the trial court to find that defendant intended to assault his family members when he entered the home and that he did, in fact, commit an assault. Defendant testified that he knew that he was prohibited from going to his family's home. Despite this prohibition, defendant went to his family's home and, when his sister Stacy Smith opened the security screen door to let the family dog out, defendant "appeared out of nowhere," grabbed the security door, forced his way inside, pushing Stacy in the process. Defendant was irate, yelling in a hostile tone, using profanities, and caused the women great fear. Soon after entering the house, defendant grabbed and shook Stacy's right arm, while demanding money. Then defendant turned his attention to his sister Stephanie Smith, paralyzed and confined to a wheelchair, and jerked and shook her, all the while demanding money.[3] Accordingly, the record evidence amply supported the trial court's conclusion that defendant entered his family's home with the intent to commit an assault, and that he did commit an assault while in the home.

Defendant next argues that the trial court erred in assessing 10 points for offense variable (OV) 10. We disagree.

When reviewing a trial court's scoring decision, its "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnote and citations omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (Footnote and citation omitted.)

---

[3] Defendant argues that there was *no testimony* that he entered the house with the specific intent to assault his family. In making this argument, defendant ignores that the principle of law that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012), and that this deferential standard of review is the same whether the evidence is direct or circumstantial. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

MCL 777.40(1)(b) imposes a score of 10 points if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." "Vulnerability" is defined as the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(2)(c). Exploitation of such a victim "means to manipulate . . . for selfish or unethical purposes." MCL 777.40(3)(b). A domestic relationship is "a familial or cohabitating relationship[.]" *Brantley*, 296 Mich App at 554 (citation and internal quotation marks omitted).

A preponderance of the evidence supported the trial court's conclusion that defendant manipulated his relationship with his family, particularly exploiting his mother's agedness and his sister Stephanie's physical disability. The evidence of defendant's past interactions with his family confirms that he was well aware of his elderly mother's and his paralyzed sister's frailties, and that all three of his female relatives would be defenseless against him as he entered their home. As the trial court observed, "the way this attack was sprung" showed defendant's intent to manipulate and exploit these susceptible victims. Defendant, who knew he was not allowed in the family home, caught his sister Stacey off guard when she opened the door to let out the family dog, and then gained entry by forcing his way past her, pushing her into a door. In a hostile and aggressive manner, defendant demanded money from the women while physically assaulting his disabled sister, confined to a wheelchair, verbally assaulting his elderly mother, and physically assaulting Stacy, who he had easily overpowered to gain entry to the house. Therefore, the record evidence provided a reasonable basis for the trial court to conclude that defendant's conduct warranted the 10-point score for OV 10.

Finally, defendant argues that this case should be remanded for resentencing. We agree.

The trial court scored the guidelines for defendant's conviction of first-degree home invasion, which is a class B offense. MCL 777.16f. Defendant received a total OV score of 30 points,[4] which, combined with his 67 prior record variable (PRV) points, placed him in the E-III cell of the Class B sentencing grid, for which the minimum sentence range is 78 to 260 months for a fourth-offense habitual offender. MCL 777.63. The trial court exceeded the guidelines range by sentencing defendant to life imprisonment.[5]

---

[4] We note that the Sentencing Information Report (SIR) incorrectly reflects that defendant received 40 OV points. However, receiving 30 OV points, defendant remained in the E-III cell of the sentencing grid for Class B offenses.

[5] MCL 769.12(1)(b) authorizes a sentence of life imprisonment for a fourth-offense habitual offender upon conviction of an offense with a statutory maximum of five or more years or life. First-degree home invasion is punishable by imprisonment for up to 20 years. MCL 750.110a(5). Therefore, defendant was eligible for a life sentence. However, because the sentencing grid for a Class B offense does not provide a life sentence for an offender who falls in the E-III cell, the life sentence constitutes a departure from the sentencing guidelines range. See, e.g., *People v Greaux*, 461 Mich 339, 345; 604 NW2d 327 (2000).

-5-

Shortly after defendant was sentenced, significant changes to Michigan's sentencing scheme were effectuated by the Michigan Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). The Michigan Supreme Court held that Michigan's sentencing guidelines are "constitutionally deficient[ ]" where they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range[.]" *Id.* at 364. As relevant to this appeal, the *Lockridge* Court held that an appellate court ought to review sentences that depart from the applicable guidelines range for "reasonableness." *Id.* at 392. In *People v Steanhouse*, 313 Mich App 1, 46-47; 880 NW2d 297 (2015), this Court adopted the "principle of proportionality" from *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), as the appropriate standard for determining the reasonableness of a sentence under *Lockridge*, "hold[ing] that a sentence that fulfills the principle of proportionality under *Milbourn*, and its progeny, constitutes a reasonable sentence under *Lockridge*." *Steanhouse*, 313 Mich App at 47-48. This Court further held that in cases where the trial court was not bound by this reasonableness standard at the time of sentencing, the case should be remanded and should follow a specific remand procedure. Specifically, the *Steanhouse* Court stated:

> Given our conclusion that the principle of proportionality established under *Milbourn*, and its progeny, is now the appropriate standard by which a defendant's sentence should be reviewed, we find that the procedure articulated in *Lockridge*, which is modeled on the procedure adopted in *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), should apply here. As recently stated by this Court in *People v Stokes*, 312 Mich App 181, 200-201; 877 NW2d 752 (2015), "the purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence so that it may be determined whether any prejudice resulted from the error." While the *Lockridge* Court did not explicitly hold that the *Crosby* procedure applies under the circumstances of this case, we conclude that this is the proper remedy when, as in this case, the trial court was unaware of, and not expressly bound by, a reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing. [*Steanhouse*, 313 Mich App at 48 (citations omitted).]

Recently, in *People v Stevens*, ___ Mich App___; ___ NW2d ___ (2016) (Docket No. 328097); slip op at 3, this Court observed that *Steanhouse* remains binding precedent. As this Court stated in *Stevens*:

> In relation to departure sentences, *Lockridge*, 498 Mich at 392, instructed that appellate courts must conduct a reasonableness review . . . .
>
> * * *
>
> [E]ven if this Court believes a defendant's pre-*Lockridge* departure sentence is reasonable and adequately supported by the trial court's record statements, we must remand to allow the defendant an opportunity to reiterate his or her request for resentencing and then for continued proceedings consistent with *Crosby*. We are not permitted to presume that the lower court would have embarked on the same reasoning had it been aware that its judgment was controlled by *Milbourn's*

reasonableness analysis. Nor are we permitted to disregard the binding precedent of this Court.

Therefore, as in *Stevens*, ___ Mich App at ___; slip op at 4, "we remand for further sentencing proceedings consistent with *Lockridge*, *Crosby* and *Steanhouse*[.]"[6]

We affirm defendant's conviction and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto

---

[6] Defendant also argues that his sentence constitutes cruel or unusual punishment prohibited by the Michigan and United States Constitutions. In light of our decision to remand for further consideration of defendant's sentence under the *Milbourn* principle of proportionality, it is not necessary to address this issue.